UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONNELL LIMITED PARTNERSHIP, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-10639-IT |
| | * | |
| ASSOCIATED INDEMNITY | * | |
| CORPORATION and THE AMERICAN | * | |
| INSURANCE COMPANY, | * | |
| | | |
| Defendants. | | |

MEMORANDUM AND ORDER

January 6, 2023

TALWANI, D.J.

This action is an insurance coverage dispute brought by Plaintiff Connell Limited
Partnership ("Connell") against Defendants Associated Indemnity Corporation ("Associated
Indemnity") and The American Insurance Company ("American Insurance"). Pending before the
court is Defendants' Motion to Dismiss for Lack of Jurisdiction, or Alternatively, for Venue
Transfer ("Motion") [Doc. No. 9]. For the following reasons, the court has personal jurisdiction
over Defendants based on Connell's claim that they violated Mass. Gen. Laws c. 176D but will
transfer the action to the Northern District of Illinois where venue is more appropriate.
Accordingly, Defendants' Motion [Doc. No. 9] is GRANTED IN PART and DENIED IN PART.

I.      Background as Alleged in the Complaint

Associated Indemnity, a California insurance company with its principal place of business
in Illinois, sold two comprehensive general liability insurance policies for the periods July 1973 to
July 1978 to Danly Machine Corporation ("Danly Machine"), a manufacturer of power presses
and other metalworking machinery. Compl. ¶¶ 11, 13 [Doc. No. 1-1]. American Insurance,
organized under the laws of Ohio with its principal place of business in Illinois, sold a

comprehensive general liability policy for the period of July 1978 to July 1981 to Danly Machine. Id. at ¶¶ 12, 14. These policies are referred to here as the "Insurance Policies."

Throughout the 1980's, Danly Machine underwent a series of corporate restructurings, purchases, sales, and acquisitions. Id. at ¶ 15. In 1987, Connell, a Delaware entity with its principal place of business in Boston, Massachusetts, purchased the assets and assumed the liabilities of Danly Machine, including, all rights under the Insurance Policies. Id. at ¶¶ 10, 15.

Beginning in the early 2000's, numerous lawsuits were brought against Danly Machine, Connell and/or the Danly Machine Division of Connell, alleging bodily injury resulting from exposure to asbestos allegedly manufactured, distributed, or supplied by Danly Machine (the "Underlying Actions"). Id. at ¶¶ 2-3. Connell and/or Danly Machine timely notified Associated Indemnity and American Insurance of the Underlying Actions. Id. at ¶ 17. From 2001 until October 2020, Defendants defended and indemnified Connell under the Insurance Policies with respect to the Underlying Actions. Id. at ¶ 4. During that time, Defendants affirmed that the Underlying Actions were covered by the eight separate insurance policy periods (1973-1981), that the policies had occurrence and aggregate annual limits of $1 million for bodily injury, and that the limits of liability of the Insurance Policies had not been reached. Id. at ¶¶ 5, 19.

In October 2020, Defendants stated that the limits of liability of the Insurance Policies had been exhausted. Id. at ¶ 6. Defendants' agent asserted that the occurrence limit of liability applies only once per each of the three Insurance Policies and not annually, and that the total limit of liability for the Underlying Actions is only $3 million, and not $8 million. Id. at ¶ 25.

Despite demands from Connell to reconsider, Defendants refused to defend and indemnify Connell under the Insurance Policies with respect to the Underlying Actions going forward. Id. at ¶ 7. Due to Defendants' change in position, Connell funded part of the October 2020 settlements related to the Underlying Actions with its own funds. Id. at ¶ 26.

## II.    Procedural Background

Connell filed this action in the Massachusetts Superior Court seeking a declaratory judgment on the duty to defend (Count I) and duty to indemnify (Count II), damages for breach of insurance policy (Count III) and breach of the implied covenant of good faith and fair dealing (Count IV), and damages, multiple damages, and attorneys' fees for violation of Mass. Gen. Laws Chapters 93A and 176D (Count V). Compl. ¶¶ 32-63 [Doc. No. 1-1]. Defendants removed the action to this court, Notice of Removal [Doc. No. 1], and filed the pending Motion, [Doc. No. 9].

## III.   Jurisdiction

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Inves., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

Where the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir. 1993).

A. *Due Process Requirements*

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). A court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

1. General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad., 196 F.3d at 288). "To permit the exercise of general jurisdiction, the defendant must 'engage[ ] in the 'continuous and systematic' pursuit of general business activities in the forum state.'" Id. at 32 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir.1984)). "For purposes of the general jurisdiction analysis, [the court] consider[s] all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Id. at 29 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir.2005)).

Connell contends that general jurisdiction exists where Defendants routinely engage in business in Massachusetts and avail themselves of the protections of Massachusetts courts, evidencing prima facie evidence of "continuous and systematic" contacts. Opp'n 6 [Doc. No. 18]. But contacts must not only be "continuous and systematic," but also such that the corporation is rendered "at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). While the Supreme Court has left open "the possibility that in an

4

exceptional case" a corporation might be "at home" elsewhere, <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 n.19 (2014), the Court continues to cite a corporation's place of incorporation and principal place of business as the paradigm cases, <u>see</u> <u>Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1024 (2021). Here, neither Defendant is incorporated nor maintains a principal place of business in Massachusetts. Compl. ¶¶ 11, 12 [Doc. No. 1-1]; Notice of Removal ¶¶ 13, 14 [Doc. No. 1].

Accordingly, the court finds that general jurisdiction does not exist as to either Defendant in Massachusetts.

2.      Specific Jurisdiction

"'Specific personal jurisdiction . . . may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" <u>Warren Env't, Inc. v. Source One Env't, Ltd.</u>, 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting <u>Pritzker v. Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." <u>Id.</u> (citing <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 35 (1st Cir. 2016).

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" <u>Back Bay Farm, LLC. v. Collucio</u>, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting <u>Ticketmaster–New York, Inc. v. Alioto</u>, 26 F.3d 201, 207 (1st Cir. 1994)). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" <u>Baskin-Robbins</u>, 825 F.3d at 35 (quoting <u>Pritzker</u>, 42 F.3d at 61).

"There is a natural blurring of the relatedness and purposeful availment inquiries in cases (like this one) in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Phillips Exeter Acad., 196 F.3d at 289. "This determination bears at least a family resemblance to a determination of whether a defendant purposefully availed himself of the protections of the forum state. Notwithstanding this resemblance, however, the inquiries are different . . ." Id.

"The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon, 600 F.3d at 32 (internal quotation marks and citation omitted).

Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances." Id.

In considering the specific jurisdiction inquiry here, both sides mistakenly seek to paint the Complaint [Doc. No. 1] with a broad brush. Defendants argue that the formation of the insurance contracts is key, pointing to the opening paragraph of the complaint, which states that "[t]his is an insurance coverage action based upon comprehensive general liability insurance policies purchased from [Defendants] . . ." Compl. ¶ 1 [Doc. No. 1]. Connell contends that its claims arise from "two decades of written and oral communication, including four specific letters sent to Connell in Massachusetts . . ." Pl.'s Supp. Mem. 1 [Doc. No. 39]. But "[q]uestions of specific jurisdiction are always tied to the particular claims asserted" and thus the inquiry must be

conducted "on a claim-by-claim basis." Phillips Exeter Acad., 196 F.3d at 289 ("commend[ing]
the lower court's decision to analyze the contract and tort claims discretely").

       a.     Claims Related to the Terms of the Insurance Policies

Connell's claims arising directly from the terms of the Insurance Policies—for declaratory
judgment on the duty to defend (Count I) and on the duty to indemnify (Count II), and damages
for breach of insurance policy (Count III)—all sound in contract. The violation of the implied
covenant of good faith and fair dealing (Count IV) is also rooted in contract law. See Phillips v.
Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008) (labelling a breach of the implied covenant of
good faith and fair dealing claim as a contract claim). Accordingly, a contract claim framework is
appropriate as to these four claims.

"For breach of contract claims, 'we ask whether the defendant's activity in the forum state
was []instrumental either in the formation of the contract or its breach.'" Vapotherm, Inc. v.
Santiago, 38 F.4th 252, 258-59 (1st Cir. 2022) (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st
Cir. 2007)). "Inferences can be drawn from the parties' 'prior negotiations and contemplated
future consequences, along with the terms of the contract and the parties' actual course of
dealing.'" Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 80 (1st Cir. 2013) (quoting
Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006).

Defendants point out that the Insurance Policies were issued to Danly Machine operating
in Illinois. Defs.' Mem. in Supp. 8 [Doc. No. 10]; Defs.' Supp. Mem. 3 [Doc. No. 38]. The
formation of the contracts in Illinois, covering an Illinois business, weighs strongly in favor of
finding that there is no specific jurisdiction over Defendants in Massachusetts based on these
claims.

The court recognizes that on October 6 and November 12, 2020, Defendants' agent
allegedly sent letters stating that the policy limits were $1 million per policy (as opposed $1

million per year of coverage) to Connell at its Boston, Massachusetts address. Oct. 6 and Nov. 12, 2020 Letters [Doc. Nos. 19-3, 19-4]. However, these communications carry little weight as to these claims since "a contract arguably is breached where a promisor fails to perform" rather than where it communicates such a breach. Phillips Exeter Acad., 196 F.3d at 291. Furthermore, "courts repeatedly have held that the location where payments are due under a contract is a meaningful datum for jurisdictional purposes." Id. In this case, only 4 of the approximately 3,382 payments made under the Insurance Policies were paid to Connell in Massachusetts. Winkler Decl. ¶ 13 [Doc. No. 11]. See Phillips Exeter Acad., 196 F.3d at 291 (rejecting the argument that the contract breach was related to a forum where certain payments were sent).

The court has considered whether a different result is warranted in light of Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28 (1st Cir. 2016), where the First Circuit reversed a district court's dismissal of a case for lack of specific jurisdiction. In Baskin-Robbins, the defendant franchisee moved in part to dismiss for lack of specific jurisdiction where the parties entered into the operative franchise agreement outside of Massachusetts. Baskin-Robbins Franchising LLC, 825 F.3d at 32. In that case, more than three decades after the parties executed the original agreement and after several ownership changes, the plaintiff franchisor moved its headquarters to Massachusetts. Id. at 32-33. After exercising its option to renew the franchise agreement twice more and sending notices of that renewal to the plaintiff franchisor's relocated headquarters in Massachusetts, the defendant informed the plaintiff that it did not intend to renew the agreement again. Id. at 33. When the defendant then wished to "revoke" that decision, the plaintiff franchisor filed a case in this District to achieve a judicial declaration that the defendant was not entitled to any compensation in connection with the expiration of the agreement. Id. In finding the relatedness prong met, the First Circuit rejected the defendant franchisee's contention that "the question of expiration arises first out of the [a]greement itself"

8

and "[i]t is only in the context of the [agreement] itself that the two letters relating to expiration can be analyzed." Id. at 36. While the court of appeals found it "transparently clear that the [a]greement itself determines the effect of [the franchisee defendant's] two letters (that is, whether those letters collectively resulted in a renewal of the [a]greement), it is the letters that set the present controversy in motion," which "create[d] a sufficient nexus between [defendant's] letters and [plaintiff's] claims to satisfy the flexible and relaxed standard for relatedness." Id.

But the claims in Baskin-Robbins turned on whether the franchisee-defendant had effectively renewed the agreement through the two letters sent into Massachusetts, whereas Connell's first four claims—based on the terms of the Insurance Policies—do not meaningfully implicate any of Defendants' communications to Connell in Massachusetts.

In sum, the court finds that there is not a sufficient nexus between Connell's claims based on the terms of the Insurance Policies and Defendants' contacts with Massachusetts to satisfy the relatedness prong. Accordingly, the court does not have personal jurisdiction over Defendants based on these claims.[1]

---

[1] Having found that the claims based on the terms of the Insurance Policies are not sufficiently related to Defendants' contacts with Massachusetts, the court need not consider purposeful availment as to these claims. In any event, this factor also is not satisfied so as to establish personal jurisdiction based on the insurance policy claims. "It is apodictic that 'the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state.'" Baskin-Robbins, 825 F.3d at 36 (quoting Phillips Exeter Acad., 196 F.3d at 290); see also Phillips, 530 F.3d at 28-29 (1st Cir. 2008) (finding in a contract suit that defendant's awareness of plaintiff's location in forum state, combined with defendant's occasional transmission of contract-related communications into forum state, was insufficient to establish defendant's purposeful availment of forum state). The First Circuit has held "in a variety of contexts, that the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Phillips, 530 F.3d at 28. In this case, after the parties entered into the Insurance Policies in Illinois, Connell acted unilaterally by acquiring Danly Machine's assets and liabilities, thereby obligating Defendants to continue dealings and communications with Connell in Massachusetts. See Nowak, 94 F.3d at 716 ("The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person").

b. Plaintiff's Statutory Claim

In contrast, Connell's claim that Defendant violated M.G.L. c. 176D (and in doing so, also violated c. 93A) (Count V) is not focused on the formation or terms of the Insurance Policies but on representations that Defendants sent to Connell in Massachusetts. Connell has satisfied due process requirements based on this claim.

i. Relatedness

In 2010, Defendants' agent allegedly sent letters to Connell at its Boston, Massachusetts address representing that the occurrence and aggregate limits of $1 million for bodily injury apply annually under the Insurance Policies. March 19 and Nov. 1, 2010 Letters [Doc. Nos. 19-1, 19-2]. On October 6 and November 12, 2020, Defendants' agent allegedly sent letters providing an "update on the status of the exhaustion of th[e] policies" at issue to Connell at its Boston, Massachusetts address. Oct. 6 and Nov. 12, 2020 Letters [Doc. Nos. 19-3, 19-4]. In the 2020 letters, Defendants' agent provided that the policy limits were $1 million per policy (as opposed $1 million per year during which the policies were active) and that Defendants' "contributions to the settlement of one or more of the[] claims may exhaust the remaining limits of their primary policies." Id. Connell alleges that Defendants violated M.G.L. c. 93A & 176D by, inter alia, "[r]epresenting over many years that the Insurance Policies provided limits of liability totaling $8 million and then improperly reversing that decision and taking the position for the first time after twenty years that the Insurance Policies only provided limits of liability." Id. at ¶ 57.f [Doc. No. 1-1].

Accordingly, Connell's statutory claim is sufficiently related to Defendants' contacts with Massachusetts to satisfy the relatedness prong.

_____

Accordingly, this factor also precludes personal jurisdiction over Defendants based on these claims.

ii.     Purposeful Availment

"In determining whether the purposeful availment condition is satisfied, our 'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016). "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself.'" Baskin-Robbins, 825 F.3d at 36 (internal quotation marks omitted) (emphasis in original). "Foreseeability requires that a defendant's contacts with the forum state are such that [the defendant] could reasonably anticipate being haled into court there." Id. (internal quotation marks omitted) (alterations in original). "Th[ese] requirement[s] ensure[] that a defendant will not be subjected to personal jurisdiction on the basis of 'random, fortuitous, or attenuated contacts' or 'the unilateral activity of another party or a third person.'" Cossaboon, 600 F.3d at 32 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

In Ford Motor Co., the Court reiterated that it has "never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." Ford Motor Co., 141 S. Ct. at 1026 ("[A] [s]tate's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the [s]tate"). "When . . . a company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the company to account for related misconduct." Id. at 1025 (quoting Int'l Shoe Co., 326 U.S. at 319 (emphasis added)). "That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. at 1026.

11

Defendants contrast their limited Massachusetts payments and communications with the facts supporting purposeful availment in Baskin-Robbins, where (i) the franchise relationship was "decades-long" with the franchisee defendant reaffirming its relationship with plaintiff franchisor on five different occasions; (ii) the franchisee defendant renewed the franchise agreement twice while franchisor plaintiff was headquartered in Massachusetts; (iii) the performance of the franchise agreement required an ongoing connection with Massachusetts, including the franchisee defendant's agents traveling to franchisor plaintiff's headquarters; (iv) there was a "constant stream of payments between" the parties; and (v) and the letter communicating the franchisee defendant's decision not to renew the agreement as well as the letter attempting to renew the relationship were sent to franchisor plaintiff's Massachusetts headquarters. Defs.' Supp. Mem. 1-2 [Doc. No. 38].

However, to determine whether the court can exercise jurisdiction over the statutory claim, the court must consider whether Defendants' "specific targeting of a forum's residents may show voluntariness" and Defendants' "'regular course of sale in the forum' [may] make the exercise of jurisdiction foreseeable." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 124 (1st Cir. 2022) (quotation marks and citation omitted) (alterations in original). In addition to asserting that Defendants are licensed to do business in Massachusetts, Compl. ¶¶ 11-12 [Doc. No. 1-1], Connell cites to publicly available Massachusetts insurance claim cases involving Defendants as evidence that Defendants have sold and issued insurance policies in the forum for many years. Opp'n 2 n.1 [Doc. No. 18] (collecting Massachusetts cases relating to insurance claims where Defendants are a party).

Defendants do not refute that they sell and issue insurance policies in Massachusetts. Instead, Defendants contend that the referenced cases are distinguishable because they involve underlying facts and occurrences in Massachusetts. Defs.' Reply 2 [Doc. No. 22]. But

Defendants' presence in the Massachusetts insurance market does point to their voluntary actions making foreseeable that Massachusetts courts would have jurisdiction over them as to a statutory claim relating to the provision of insurance to Massachusetts residents. Said differently, Defendants had "fair warning" that "a particular activity"—the provision of general liability insurance—"may subject [them] to the jurisdiction of" courts in Massachusetts. Ford Motor Co., 141 S. Ct. at 1025.

Accordingly, the court finds the requirement of purposeful availment satisfied based on Connell's statutory claim.

           iii.        Reasonableness

"The final piece of the puzzle is that an exercise of jurisdiction must be reasonable, in other words, consistent with principles of justice and fair play." Bluetarp Fin., Inc., 709 F.3d at 83. "The reasonableness inquiry focuses on an assessment of the so-called 'Gestalt factors,' which include (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3.

"The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." Ticketmaster-New York, Inc., 26 F.3d at 209. "[I]n certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness." Id. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. at 210. "The reverse

is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id. Nonetheless, "[t]he gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist." Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 166 (1st Cir. 2022) (quoting Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002)).

With respect to the first Gestalt factor, Defendants' assertion that "some elevated burden to send witnesses, documents, and other materials to Massachusetts to appear," Mem. in Supp. 11 [Doc. No. 10], is insufficient to find that the first factor cuts in their favor. "[S]taging a defense in a foreign jurisdiction is almost always inconvenient and/or costly . . . [thus] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64.

As for the second Gestalt factor, where Defendants argue that Illinois has a greater interest in adjudicating the dispute than Massachusetts, they have misstated the inquiry, which "requires that [the court] determine the extent to which the forum has an interest rather than compare the strength of the forum state's interest to that of other states." Mojtabai v. Mojtabai, 4 F.4th 77, 88 (1st Cir. 2021) (internal quotation marks omitted) (emphasis in original). However, the First Circuit has found it "both appropriate and useful to note . . . [that] the Commonwealth's interest in the litigation sub judice is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum." Ticketmaster-New York, Inc., 26 F.3d at 211. As discussed above, except for the Defendants' acts related to the statutory claim, the court has found that the acts giving rise to the action did not occur in Massachusetts, lessening the forum's interest in the dispute.

For the third Gestalt factor— the plaintiff's interest in obtaining convenient and effective relief—Defendants contend that Connell may obtain such relief just as easily in Illinois. Yet,

14

where Defendants posit that both Massachusetts and Illinois may provide Connell with convenient and effective relief, we must "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Pritzker, 42 F.3d at 64.

The fourth Gestalt factor— the judicial system's interest in obtaining the most effective resolution of the controversy—is "'a wash' where, as here, even if the case is dismissed in Massachusetts 'it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum.'" Gather, Inc. v. Gatheroo, LLC, 443 F. Supp. 2d 108, 119 (D. Mass. 2006) (quoting Hasbro Inc. v. Clue Computing Inc., 994 F. Supp. 34, 46 (D. Mass. 1997)).

The fifth and last of the Gestalt factors implicates the interests of the affected governments in substantive social policies. Defendants contend that this factor does not cut in favor of either party. But as to the claim that Defendants violated a Massachusetts insurance statute causing injury to a Massachusetts resident, the factor weighs in favor of personal jurisdiction. See Burger King, 471 U.S. at 473, 105 S. Ct. 2174 ("[A] State generally has a 'manifest interest' in providing its resident with a convenient forum for redressing injuries inflicted by out-of-state actors").

In sum, although the question is close, the court finds the exercise of personal jurisdiction over Defendants based on the statutory claim in Massachusetts meets the dictates of due process.

B.    *Massachusetts Long-Arm Statute*[2]

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC, 825 F.3d at 34. The requirements of both must be satisfied to establish jurisdiction over a defendant. Cossart, 804 F.3d at 18.

---

[2] Both parties direct the court to their respective due process arguments for purposes of determining whether jurisdiction exists under Massachusetts long-arm statute. See Mem. in Supp. 5 n.1 [Doc. No. 10]; Opp'n 5 n.2 [Doc. No. 18]. The inquiry is similar, but not the same.

The Massachusetts long-arm statute provides as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the persons (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e) having an interest in, using or possessing real property in this commonwealth (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting . . . .

Mass. Gen. Laws c. 223A, § 3. "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994). "Massachusetts courts construe subsection [§ 3](a) very broadly." The Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 318 (D. Mass. 2008) (collecting cases). "As the First Circuit has noted, a nonresident 'transacts business' in Massachusetts as long as he has engaged in 'any purposeful acts . . . whether personal, private, or commercial.'" Id. (quoting Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 982 (1st Cir.1986) (citation omitted). "Moreover, the defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Id. at 319 (quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102, 110 (D. Mass. 2003) (collecting First Circuit cases)). "The 'arising from' clause in Mass. Gen. Laws, c. 223A is to be generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp., 246 F. Supp. 2d at 112 (citing Tatro, 416 Mass. at 771-72, 625 N.E.2d 549).

As the Insurance Policies were entered into before Connell acquired Danly Machine's assets and liabilities, it cannot be said that the Insurance Policies would never have come into

existence but for Defendants' payments to and correspondence with Connell in Massachusetts. See id. (finding § 3(a) met when defendant's "contacts with Massachusetts played a material role in the formation and ultimately the consummation of the contract that gave rise to [plaintiff's] cause of action"). And while it remains undisputed that Defendants have transacted other business in Massachusetts, "such activities did not play an instrumental role in the formation of the contract in dispute . . . . [and] do not satisfy the 'arising from' requirement of the long-arm statute." Id. at 112 n.6. However, the outcome differs with respect to Connell's statutory claim where Defendants' correspondence with and representations to Connell in Massachusetts are the "but for" cause of Connell's claim that Defendants violated M.G.L. c. 176D.

Accordingly, the court finds jurisdiction exists under Massachusetts long-arm statute based on Connell's statutory claim.

## IV.   Venue

Defendants contend that venue in the District of Massachusetts is not proper under 28 U.S.C. § 1391(b)(1).[3] However, "§ 1391 has no application to this case because it is a removed action." JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 99 (D. Mass. 1999) (citing Polizzi v. Cowles Mags., Inc., 345 U.S. 663, 665-66 (1953) ("Section 1391(a) limits the district in which an action may be 'brought.' . . . . Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.")). "The venue of a removed action is governed by 28 U.S.C. § 1441(a) . . . which provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" Id. (quoting 28 U.S.C. § 1441(a)). Moreover, "removal of an action to a

---

[3] Under § 1391(b)(1), a plaintiff may bring a civil action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

proper forum under § 1441(a) frequently has been considered a waiver or cure of any defect in the original venue of the removed action . . . ." Id. (quoting Lambert v. Kysar, 983 F.2d 1110, 1113 n. 2 (1st Cir. 1993)); accord Polizzi, 345 U.S. at 665. Accordingly, the court finds that venue is proper where Defendants removed this case to the District of Massachusetts from Suffolk County Superior Court.

Defendants argue in the alternative for a transfer of venue to the Northern District of Illinois. Under 28 U.S.C. § 1404, the district court has discretion to transfer a case after taking an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). In so doing, the court considers factors such as: (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake. First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 318 (D. Mass. 2022). Defendants "bear[] the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).[4]

With the respect to plaintiff's choice of forum, Connell brought suit in Massachusetts, its home state. As such, the first factor weighs against transfer. Indeed, as the First Circuit has emphasized, a "plaintiff's choice of forum should rarely be disturbed." Adelson, 510 F.3d at 52.

The second factor—relative convenience to the parties—does not weigh in favor of either party. Both parties are commercial entities and are capable of litigating in either Massachusetts or

---

[4] The parties do not dispute that the Northern District of Illinois presents an adequate alternative forum.

Illinois. "Where transfer would merely shift inconvenience from one party to the other, the second factor is neutral." First State Ins. Co., 583 F. Supp. 3d at 319.

The third factor—convenience of the witnesses and location of documents—similarly does not weigh in favor of either party. Defendants argue generally that because most of the events underlying the claims happened in Illinois, many of the witnesses will reside there as well. Connell refutes that assertion and provides a list of four likely witnesses residing in either Massachusetts, North Carolina, or California. However, witnesses' testimony is less relevant in a case such as this that in large part will turn on turn on contract interpretation. To the extent any documents are needed, "the development of digital technology has caused the importance of the location of documentary evidence to wane." Id.

The fourth and sixth factor—connection between the forum and the issues and the state or public interests at stake—weigh heavily in favor of Defendants and transfer to the Northern District of Illinois. Although Connell, which purchased all of the assets and assumed all of the liabilities of Danly Machine, is based in Massachusetts, the Insurance Policies were issued in Illinois to Danly Machine by two insurance companies headquartered in Illinois and, as discussed in detail above, most of the claims pertain to the Insurance Policies themselves and have little if any connection to Massachusetts. Furthermore, while the Underlying Actions primarily span three states—Illinois, Ohio and Michigan—with additional claims in other states, including West Virginia, Delaware, Pennsylvania, New York, New Jersey and California, no underlying lawsuits are in Massachusetts. Winkler Decl. ¶¶ 9-11 [Doc. No. 11].

The fifth factor—applicable law—"is given 'significantly less weight' where the case involves 'basic or well-established, as opposed to complex or unsettled' issues of state law." First State Ins. Co., 583 F. Supp. 3d at 320 (quoting 15 Charles A. Wright & Arthur R. Miller, Federal

Practice & Procedure § 3854 (4th ed.)). Here, there are no claims of complex or unsettled issues of state law, and accordingly, this factor does not tip the scales either way.

Taking the factors as a whole, the court finds that the Insurance Policies entered into in Illinois—at the heart of Connell's claims—overcome the presumption in favor of Connell's chosen forum where the Defendants' connections to Massachusetts (but for the acts related to the statutory claim) are incidental. Accordingly, the court grants Defendants' alternative request for a transfer of venue to the Northern District of Illinois.

## V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Venue Transfer is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: January 6, 2023                          /s/ Indira Talwani_____
                                                United States District Judge